## WHITENER et al. v. MOSS.

No. 9216—Opinion Filed Sept. 10, 1918.

(175 Pac. 223.)

(Syllabus.)

### 1. Indians—Allotted Lands—Descent—"Ancestral Estate."

Lands allotted to a full-blood Cherokee Indian, who thereafter and on September 8, 1904, died unmarried, intestate, and without issue, will be treated as an ancestral estate within the meaning of section 2531, Mansfield's Digest of the Laws of Arkansas at the time in force in the Indian Territory by Congressional enactment.

### 2. Indians—Allotment—Descent.

In case both parents· are of Cherokee blood, the estate of a deceased son ascends equally to the father and the mother. If the mother's death precedes that of the son, the moiety which she, if living, would have taken ascends to her heirs.

### 3. Appeal and Error—Review — Questions Not Raised Below.

Where a case is submitted entirely upon an agreed statement of facts in which it is stipulated by the parties "that the sole question to be passed upon and decided by the court in this case is the question of descent," and the court so confines its decision, the prevailing party will not be permitted in this court for the first time to raise the issue of limitations, on the claim that upon that issue the trial court reached a correct conclusion.

Error from District Court, Cherokee County; John H. Pitchford, Judge.

Action by Jennie Whitener, nee Clark, and Perry Clark, against Millard F. Moss. Judgment in favor of defendant, and plaintiffs bring error. Reversed and remanded, with instructions.

E. C. McMichael and Asbery Burkhead, for plaintiffs in error.

J. I. Coursey, for defendant in error.

SHARP, C. J. Nelson Baldridge, a full-blood Cherokee Indian, died in Cherokee county, Okla., September 8, 1904, unmarried, intestate and without issue, leaving an al-

lotment of lands a one-third interest in which is claimed by the plaintiffs in this action. Nelson Baldridge the deceased, was the son of Columbus Baldridge and Nancy Baldridge, each of whom was a full-blood Cherokee Indian. Nancy Baldridge died intestate March 6, 1902, while her husband, Columbus Baldridge, died September 24, 1905. Nancy Baldridge, by a first marriage to Charles Clark, was the mother of three children; Jennie Whitener, nee Clark, Perry Clark, and Myrtle Clark, who died in 1907. As a result of her marriage with Columbus, two children were born, the allottee, Nelson, and Takie. Prior to his marriage to Nancy, Columbus had contracted a former marriage of which union three children were born, but whose names do not appear in the proceedings. Claiming to be the sole heirs at law of Nelson, the children of Columbus, after the death of Nelson, sold the lands allotted to Nelson through the probate court of Cherokee county to Millard F. Moss, the defendant. The controversy arises through the claim that at the death of Nelson his estate ascended to his father, Columbus, at whose death it descended to the latter's children. On the part of plaintiff's it is claimed that on the death of Nelson the estate ascended one-half to his father Columbus and one-half to the heirs at law of his deceased mother, Nancy, each being full-blood Cherokee Indians. That Myrtle Clark having died in 1907 unmarried, without issue and intestate, her interest in the estate of her deceased half-brother passed in equal parts to her sister Jennie, her brother Perry, and her half-sister Takie.

It will be noted that the descent was cast while chapter 49 of the Laws of Arkansas was in force in the Indian Territory by congressional enactment. Nelson having died without descendants, and the estate being ancestral as distinguished from a new acquisition (Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615; Pigeon v. Buck, 38 Okla. 101, 131 Pac. 1083; Id., 237 U. S. 386, 35 Sup. Ct. 608, 59 L. Ed. 1007; Roberts v. Underwood, 38 Okla. 376, 132 Pac. 673; Id., 237 U. S. 386 35 Sup. Ct. 608, 59 L. Ed. 1007; McDougal v. McKay, 43 Okla. 261, 142 Pac. 987; Id., 237 U. S. 372, 35 Sup. Ct. 605, 59 L. Ed. 1001), section 2531, Mansfield's Digest, governs the devolution of the title. That section provides:

"If the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs."

As the estate came as much by the blood of the mother as by the blood of the father, it cannot be said that the heirs of the former inherit to the exclusion of the latter. While the case does not come clearly within the statute, in that an allotment of land cannot strictly be said to "come by the father," or "by the mother," it has been applied in such cases in order to effectuate as nearly as possible the purpose of Congress in fixing the rules of descent in such cases. Cowokochee v. Chapman, 67 Okla. 263, 171 Pac. 50; Shulthis v. McKay, 170 Fed. 529, 95 C. C. A. 615; McDougal v. McKay, 237 U. S. 372, 35 Sup. Ct. 605, 59 L. Ed. 1001. That Nancy Baldridge died prior to the death of her son Nelson, would not affect the right of her children to inherit her moiety of the estate. Thorn v. Cone, 47 Okla. 781, 150 Pac. 701; Buck v. Simpson 65 Okla. 265, 166 Pac. 146; Johnson v. Dunlap, 68 Okla. 216, 173 Pac. 359.

Counsel for defendant in error seem principally to rely on the statute of limitations as a defense. It is said that if upon the face of the record and the admitted facts the judgment of the trial court is correct, though based upon a wrong reason, the judgment should be affirmed. The principle contended for has no application, as the case below was tried entirely upon an agreed statement of facts in which, at the conclusion, was the following provision:

"That the sole question to be passed upon and decided by the court in this case is the question of descent. That is to say, whether or not the whole estate descended to the father, Columbus Baldridge, on the death of Nelson Baldridge, or did one-half descend to the heirs of the deceased mother, Nancy, formerly Nancy Baldridge."

That the stipulation was treated as limiting the issues to the question of descent appears from the following provision of the journal entry:

"The court further finds, as stated and agreed in the stipulation filed herein as the testimony in the case, that the sole question to be decided in this case under the evidence is whether, upon the death of Nelson Baldridge, the whole estate of Nelson Baldridge descended to the father, Columbus Baldridge, to the exclusion of the children of Nancy Baldridge, deceased, mother of said Nelson Baldridge, deceased, by her former husband, Charley Clark, deceased, or did one undivided half of said estate descend to the heirs of the mother of the deceased, Nelson Baldridge."

The rule is of almost universal applica-

tion that questions, of whatever nature. not raised and properly presented for review in the trial court, will not be noticed on appeal. And where counsel declares in the trial in open court that only a certain question is involved in the case, or where, by stipulation, the case is submitted only on a certain question, other questions cannot be raised in the appellate court. This question was before the court in the early case of Little Co. v. Burnham, Hanna, Munger & Co., 5 Okla. 283, 49 Pac. 66. In that case the journal entry and an amendment to the record shows that:

"Both parties elected to submit the case upon the question of the validity of the chattel mortgage in question."

And it was held that the question as to whether possession was taken by another under a transfer by way of pledge could not. after such an agreement, be considered on appeal. Other cases in point are: St. L. & S. W. R. Co. v. White Sewing Mach Co., 78 Ark. 1, 93 S. W. 58, 8 Ann. Cas. 208; Chicago v. Duffy, 179 Ill. 447 53 N. E. 982; Halpine v. May, 100 Mass. 498; Gensler v. Nicholas 151 Mich. 529, 115 N. W. 458, 14 Ann. Cas. 452; Eckes v. Stetler, 98 App. Div. 76, 90 N. Y. Supp. 473; Hall v. Darrah (Tex. Civ. App.) 59 S. W. 815. Nor does the fact that prior to answer defendant had filed a general demurrer, in the face of the subsequent admission, affect the rule, as clearly the case was submitted upon the issue of law raised in the agreed statement of facts "that the sole question to be passed upon and decided by the court in this case is the question of descent."

As the judgment of the court is in conflict both with the statute and the decisions, fixing and determining the rule of descent in such cases, it is reversed, and the cause remanded, with instructions to proceed in accordance with the views herein expressed.

All Justices concurring.